UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

SUMMERDAWN D. WASHINGTON
            Plaintiff,                       Civil Action No. 06-10143
                                                       Judge Avern Cohn

COMCAST CORPORATION, a Pennsylvania
Corporation, and COMCAST CABLEVISION,
a Michigan Corporation,
            Defendants.
_____/

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE**

**I. Introduction**

This is an employment discrimination case. Plaintiff, Summerdawn Denise Washington (Washington) brings claims under the Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. (ERISA); the Michigan Persons With Disabilities Civil Rights Acts, M.C.L. § 37.1101 et seq. (MPDCRA); and the Bullard-Plawecki Employee Right to Know Act, M.C.L. § 423.503 (Bullard-Plawecki).[1]

Washington was employed by Defendant, Comcast Cablevision (Comcast) for approximately three years; she says she was wrongfully terminated on November 4, 2004. Specifically, Washington claims that (1) Comcast's decision to terminate her employment while she was on approved short term disability (STD) leave was a clear violation of ERISA, and that Comcast discharged her with the specific intent to interfere

---

[1] Washington has voluntarily dismissed the following claims: (1) breach of contact, (2) violation of public policy, (3) promissory estoppel, (4) violation of implied covenant of good faith and fair dealing, and (5) negligent evaluation.

1

with her assertion of rights under ERISA; (2) Comcast wilfully and intentionally violated the Bullard-Plawecki Act by refusing to give her her employment file after she requested it in writing; and (3) the fact finder should determine Washington's claim under the MPDCRA.  Washington seeks judgment against Comcast in whatever amount she is found entitled, plus costs, interest, and attorney fees.

Before the Court is Comcast's motion for summary judgment.  For the following reasons, the motion will be granted.

## II.  Factual Background

(1)     Washington was hired as a Customer Account Executive for Comcast on June 10, 2002.  Upon starting her employment, Washington signed an "acknowledgment and receipt" form of a Comcast Employee Handbook which includes the following provisions concerning the nature of her employment, STD benefits, and Comcast's absentee policy:

> • All employment relationships are "at will", and "Comcast retains the ... right to terminate employment with or without prior notice and with or without good cause."
>
> • The Employee Handbook is not a contract or a promise of benefits or guarantee of employment.
>
> • After 90 days of employment, employees are automatically eligible for STD benefits at Comcast's expense under Comcast's Employee Health and Welfare Benefits Plan, and are entitled to collect up to 26 weeks of benefits.  Coverage ends on the earliest of "the date the STD benefits is cancelled, the date you are no longer eligible, the date your employment terminates, or the date you take an unpaid personal leave of absence."
>
> • "If you are on a paid or unpaid leave that extends beyond the approved STD leave period, you must apply for and receive approval for a medical leave of absence.  Your same position cannot be guaranteed beyond 12 weeks from the start of your disability.  However, upon return for an approved medical leave of absence, Comcast will make reasonable efforts to find a suitable available

position."

• "An absence of three or more workdays without notice is considered job abandonment, and will be treated as a resignation from employment. Employees who are terminated for job abandonment will not be eligible for rehire."

It is undisputed that the STD program is governed by ERISA. Comcast uses Broadspire, a third-party-administrator, to process and review employee applications for STD leave.

(2) In August of 2003, Washington filled out a hand-written change of address form for Comcast. Washington's address is 30332 <u>North</u> Park Drive. Comcast however, interpreted the "N" for "North" as a "W" for "West", and entered her address into their computer database as 30332 <u>West</u> Park Drive. It is undisputed that there is no West, East, or South Park Drive in the vicinity.

(3) On June 18, 2004, Washington told Ronald Andrews (Andrews), a Comcast Human Resources Administrator, that she needed time off starting June 19, 2004, to undergo gastric bypass surgery. At Andrew's direction she contacted Broadspire and applied for STD leave and income benefits. On June 22, Washington signed and returned an "Authorization to Share and Use Medical Information" form, which had been addressed to 30332 <u>West</u> Park Drive. Washington took off of work starting on June 19, 2004, and underwent surgery on June 24, 2004.

(3) On August 9, 2004, Rochelle Prestage (Prestage), a Comcast Human Resources Manager, sent Washington a letter stating that she had been approved under the Family Medical Leave Act (FMLA)[2] for leave starting June 24, 2004, and was expected to

---

[2] It appears that for the first 12 weeks of her leave, Washington's application for STD leave was processed as an FMLA claim. Comcast explains that FMLA benefits

3

return to work no later than August 12, 2004.  The letter also explained that Washington was entitled to a maximum of 12 weeks of unpaid leave during one calendar year. Washington says she received this letter which was addressed to 30332 <u>West</u> Park Drive.

Around this same time, Broadspire received a physician's FMLA certification stating that Washington would be incapacitated for a probable duration of 4-6 weeks due to the surgery, and approved Washington's claim for STD benefits through August 14, 2004.

(4)     Washington failed to return to work on August 14, 2004, and on August 18, 2004, Comcast sent her a letter stating that she must return to work by August 20, 2004, and provide documentation to justify her unexplained absence or she would be deemed to have "voluntarily resigned" from her position.   When Washington failed to respond by August 24, 2004, Comcast sent her a termination letter.  Washington says she received both letters (which were sent via UPS overnight delivery and first class mail)  which were addressed to 30332 <u>West</u> Park Drive.

On August 25, 2004, Washington contacted Andrews (Comcast Human Resources) and told him that she had been hospitalized for complications to her surgery from August 19, 2004, to August 24, 2004, and had not intended to resign.  Andrews immediately contacted Broadspire with this information and Washington's employment

---

run concurrently with STD benefits under Comcast's policy, as stated in their handbook. The parties do not dispute that Washington applied through Broadspire for STD leave, a company benefit which was available for up to 26 weeks and is governed by ERISA. Washington does not allege a violation of the FMLA.

was reinstated after she provided Broadspire with medical documentation confirming her continued inability to work. Broadspire approved Washington for extended STD benefits through September 11, 2004.

(5)     From September 12, 2004, to October 13, 2004, Washington's claims for extended benefits were under review by Broadspire. On October 6, 2004, Washington spoke with a Broadspire agent on the telephone and was told that her claim for extended STD benefits was pending denial, but was given until October 8, 2004, to submit more medical documentation which she did. On October 13, 2004, Broadspire informed Comcast that Washington's application was approved through October 5, 2004, but denied after that date. Broadspire sent Washington a letter informing her of the denial and her right to appeal the decision. The letter was addressed to the 30332 <u>West</u> Park Drive. Washington claims that she never received this letter.

(6)     On October 29, 2004, Andrews (Comcast Human Resources) sent Washington a letter stating that since Broadspire had denied Washington's request for STD leave beyond October 5, 2006, she was now on "unapproved leave status" and that unless she returned to work by November 3, 2004, Comcast would consider her absence to be a voluntarily resignation of her position. This letter was sent to the 30332 <u>West</u> Park Drive address via UPS overnight mail and first class mail. Washington says she never received this letter.[3] When Washington did not show up for work on November 3, 2004,

---

[3] The UPS tracking record shows that the letter was delivered to Washington's apartment complex and signed for by her apartment manager (Goodchild) on November 4, 2004. It appears however, that on January 27, 2005, the UPS package was returned to Comcast as "undelivered".

Andrews contacted Broadspire to see if Washington had an appeal pending and was informed that she did not. Andrews then terminated Washington as of November 4, 2004, noting that Washington, "did not respond to correspondence regarding denial of STD benefits. Employee has voluntarily terminated employment while on unapproved leave."

(7)   On November 8, 2004, Washington contacted Broadspire. Washington says that she called after discovering that her STD income benefits were no longer being directly deposited into her bank account. Broadspire informed her that her benefits had been terminated as of October 6, 2004, and that it had sent her a letter on October 13, 2004, containing this information. Washington told Broadspire that she never received the letter in the mail. At this point Broadspire checked her address and changed the street address from <u>West</u> Park Drive to <u>North</u> Park Drive in its computer database. Washington expressed surprise at the mistake in her address but states that she had received mail from Broadspire before. At this time, Washington asked if she could appeal her denial of benefits, and she was informed she could do so immediately. Washington faxed her appeal application to Broadspire on November 12, 2004.

(8)   On December 16, 2004, Washington called Comcast.[4] Washington spoke with Kelly Valade (Valade) in Human Resources. Washington told Valade that she would be ready to return to work on December 20, 2004, which she said marked the end of her 26 weeks of leave. Valade was unfamiliar with the Washington's situation and told her that she would check to make sure that she was authorized to return to work.

---

[4] It appears that this was the first time since August 24, 2004, that Washington directly contacted Comcast, instead of Broadspire.

Washington went to Comcast on December 20, 2004, but was told that Comcast had not yet determined whether she was authorized to return to work. On January 6, 2005, Comcast informed Washington that she had been terminated on November 4, 2004.

(9) On January 21, 2005, Broadspire wrote to Washington telling her that her appeal had been reviewed and that STD benefits were approved from October 6, 2004, through December 17, 2004. Upon learning that Washington had been terminated, Broadspire wrote her a "correction letter", stating that STD benefits were approved from October 6, 2004, to her termination date of November 3, 2004.[5]

(10) On January 7, 2005, Washington requested her employment file. Prestage (Comcast Human Resources Manager) told Washington that she would need to submit the request in writing with her current address. Washington requested her file in writing, but was not sent her employment file. On February 15, 2005, Washington sent an "employee profile change form" to Comcast, stating her new address. On April 20, 2005, Washington's attorney requested her employment file, but Comcast did not respond. Washington filed suit on December 21, 2005. Her personnel file has since been sent to her.[6]

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of

---

[5] The record reflects that these letters were also addressed to 30332 West Park Drive, despite Washington's discussion with the Broadspire agent. Washington says she received these letters.

[6] Neither party states the date on which Washington received her file.

material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the

moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

## IV.  Analysis

### A.  Whether Comcast Terminated Washington in Violation of ERISA.

#### 1. Applicable Law

Section 510 of ERISA states that :

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this title, section 3001 29 U.S.C. § 1201, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this title, or the Welfare and Pensions Plans Disclosure Act.

29. U.S.C. § 1140.

To state a claim under Section 510, a plaintiff must show that the employer had a specific intent to interfere with an employee's assertion of rights under ERISA. Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir. 1992).  Absent direct evidence of such intent, a plaintiff can establish a prima facie case of interference by showing that there was "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Smith v. Ameritech, 129 F.3d 857, 865 (6th Cir. 1997) (internal quotations and citation omitted).

#### 2.  Arguments

Washington asserts that one of her rights under ERISA was to be absent from work while she was on approved STD leave, and that Comcast clearly and directly

violated her rights by terminating her while she was on approved STD leave. Washington asserts that she was on approved STD leave from July 24, 2004, to December 17, 2004.  Washington cites to Lessard v. Applied Risk Management, 307 F.3d 1020, 1026 (9th Cir. 2002) in which the court of Appeals stated that "section 510 is violated when an employer selects for presumptive termination and denial of benefits specifically those employees presently on medical or disability leave."  Washington also relies on the following cases in which courts held that the employers violated Section 510 when they terminated employees who had benefit claims pending or were anticipating pension benefits:  Zimmerman v. Sloss Equipment, Inc., 835 F. Supp. 1283 (D. Kans. 1993); Pennington v. Western Atlas, Inc., 202 F.3d 902 (6th Cir. 2000); Simpson v. Fireman's Fund Insurance Company, 231 F.R.D. 391 (N.D. Cal. 2005);  O' Donnell v. Biolife Plasma Services, L.P., 384 F. Supp 2d. 971 (S.D. W. Va. 2005); and Huske v. Honeywell International, Inc., 298 F. Supp. 2d. 1222 (D.C. Kans. 2004).

    Second, Washington asserts that she has established a prima facie case of an ERISA interference claim based on indirect evidence.  Washington says that Comcast terminated her with the specific intent to interfere with her rights to attain benefits because it were concerned with the costs of her rehabilitation and future health benefits. Washington points to the "volume of letters" Comcast sent her while she was on leave as indicative of Comcast's motive to interfere with her rights.

    Third, Washington says that her termination was also the result of a violation of ERISA's notice procedures, 29 U.S.C § 1133.[7]  Washington says that she did not

---

[7] Section 1133 (Claims procedure) provides that:

receive adequate notice of her denial and right to appeal until after she was terminated because she never received the October 13, 2004 letter from Broadspire or the October 29, 2004 letter from Comcast, which she says was addressed incorrectly.

Finally, Washington says that Comcast violated its company policy (as stated in the Employee Handbook) when it refused to place her in a different position when she returned to Comcast on December 20, 2006.

Comcast says that Washington has not presented direct evidence that it intended to interfere with her assertion of rights under ERISA. Comcast argues that the <u>retroactive</u> approval of Washington's benefits from October 6, 2004, through the date of her termination does not lead to the conclusion that her termination was in violation of ERISA because at the time she was terminated, Washington was not on approved STD leave and had no appeal pending. Comcast points out that it was not until November 12, 2004 that Washington appealed the denial of her benefits past October 5, 2004; and it was January 21, 2005 when her appeal was granted giving her additional STD benefits past October 6, 2004.

Second, Comcast argues that Washington has failed to make out a prima facie interference case on the basis of indirect evidence, because Washington presents no

---

In accordance with regulations of the Secretary, every employee benefit plan shall--

1. (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

evidence that Comcast was motivated to terminate her in order to save money. Comcast says that when they terminated her on November 4, 2004, Washington had already been paid her STD benefits through October 5, 2004. Furthermore, Comcast says that it could not have anticipated that Washington's STD benefits would be of further expense to the company because Washington had no appeal pending on November 4, 2004, and her appeal was not filed until November 12, 2004.

Comcast maintains that it fired Washington for her unexcused absences. In its supplemental papers to the Court, Comcast cites to cases in which courts have found no violation of ERISA where an employer has terminated an employee for excessive absences, including absences approved under an employer's benefit plan, where there is no evidence of the employer's specific intent to interfere with the employee's assertion of ERISA benefits. Kinkead v. SouthWestern Bell Telephone Co., 49 F.3d 454 (1995); Lindemann v. Mobil Oil Corp., 141 F.3d 290 (7th Cir. 1997). In both Kinkead and Lindemann, the employers cited to the employees' problems with excessive absenteeism prior to receiving disability benefits as the basis for termination. Comcast says that these cases establish that the right to employment is distinct from the right to ERISA benefits.

Third, Comcast says that it did provide Washington with adequate notice in violation of Section 1133. Comcast maintains that it <u>sent</u> Washington her termination letter, and that Broadspire <u>sent</u> her the denial of benefits letter. Comcast also points out that Washington had received mail at this particular address, and Washington has not alleged that Comcast intentionally sent the letter to an incorrect address. To the contrary, Washington testified at deposition that she believed the entering of "West"

instead of "North" address "just a mistake."

Finally, Comcast says that it did not fail to follow its policy of placing returning employees back in positions because Washington was not considered a returning employee. Instead, when Washington failed to contact Comcast or show up for work on November 3, 2004, Comcast assumed she had voluntarily resigned her position. Comcast's policy is that employees will not be rehired if terminated for job abandonment. Moreover, the handbook is not a contact between Washington and Comcast, as Washington is an "at -will" employee.

### 3. Resolution

#### a.

Washington has failed to create a genuine issue of fact as to whether Comcast violated ERISA. What really lies at the heart of this case is Washington's assertion that she <u>believed</u> that she was on approved leave as of November 4, 2004 because she did not <u>receive</u> the letters stating otherwise. Therefore, the threshold question is whether Comcast provided Washington with adequate notice under Section 1133.

Washington has made no allegation that Comcast did not send her the letters in question. Indeed, the record reflects that both Broadspire and Comcast sent Washington her denial of benefits letter and notice of possible termination letter to the address where she habitually received her mail during the relevant time period. Moreover, Washington was in a better position to ensure that her employer had her correct address. Washington has presented no case law to support her assertion that the non-receipt of notice sent to an address where a person regularly receives mail,

13

constitutes an ERISA violation of adequate notice.[8]  The Court finds that Comcast did provide adequate notice by sending her the letters via United States First Class Mail and UPS overnight service mail.  That Washington says she did not receive these letter, however unfortunate that may be if true, does not negate the fact that Comcast fulfilled its responsibilities under Section 1133.

**b.**

Next, the Court finds that Washington has produced no direct evidence of Comcast's intent to interfere with her assertion of rights under ERISA.  As a factual matter, Washington was not on approved STD and had no appeal pending when Comcast terminated her employment on November 4, 2004.  These facts are unchanged despite Broadspires' retroactive approval of benefits from October 6, 2004 to the date of her termination on January 26, 2005.  Therefore, Washington's reliance on Lessard is inapplicable here because at the time she was terminated she was not entitled to benefits.[9]

Neither has Washington established a prima facie case of interference of her assertion of benefits protected by ERISA with circumstantial evidence.  Washington has provided no evidence whatsoever that Comcast terminated her with the motive to save

---

[8]  The Court's independent research reveals no case law on this issue.

[9]  The Court finds it unnecessary to address whether Kinkead or Lindemann would be applicable (i.e. whether the right to employment is distinct from the right to ERISA-protected benefits) here if the Court found that Washington was on approved leave at the time.  The Court notes however, that these cases are from different circuits, and appear to contradict Pennington v. Western Atlas, Inc., 202 F.3d (6th Cir. 2000), in which the court held that the termination of an employee while she was on approved leave was direct evidence of intent to interfere.

costs.  Simply alleging that Comcast wanted to get rid of her because her medical benefits were too expensive does not established a causal link between her claim that she was on approved leave and her termination.  Comcast had no obligation to pay Washington at this time, and had no reason to anticipate that Washington would be granted benefits in the future, as she had not appealed her denial at that time.

Finally, Washington had no right to be replaced to a position within Comcast on December 20, 2004.  Washington was terminated for job abandonment and therefore not eligible for rehire under Comcast's policies.  Moreover, even if she had not been terminated, the handbook is not a contract between Comcast and Washington that obligated Comcast to place Washington in a position when she wished to return to work.

### B.  Michigan Persons With Disabilities Civil Rights Act (MPDCA)

#### 1. The Legal Standard

The MPDCRA defines a protected disability as:

> A determinable physical or mental characteristic of an individual which may result from disease, injury, congenital condition of birth, or functional disorder if the characteristic ... substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits one or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.  M.C.L § 37.1103(d)(i)(A).

#### 2.  Arguments

Washington argues that when she underwent surgery pursuant to her short-term disability (STD) leave, she become a person with a disability for a period of time.  She points out that Comcast's own doctors considered her "disabled" at the time she was terminated.  Washington argues that these facts have created a genuine issue of fact as

15

to whether she is entitled to protection under the MPDCRA, and whether Comcast violated the MPDCRA by "firing" her in retaliation for "claiming a disability."

Comcast argues that Washington is not protected under the MPDCRA because she does not meet the definition of "disabled" set forth in the act.  Under the MPDCRA a disabled person is still able to perform the duties of a particular job or position. Comcast pint out that the PWDCRA defines covered disabilities as impairments "unrelated to the individual's ability to perform the duties of a particular job." M.C.L. § 37.1103(d). In contrast, under Comcast's medical leave plan, Washington was considered "disabled" for the opposite reason-- because she was <u>unable</u> to perform her duties at all while she was on medical leave.  Under Comcast's STD plan, "a disability is defined as being unable to perform your own job" due to injury or illness lasting more than seven days. Comcast argues that its definition for STD leave is inconsistent with MPDCRA's and therefore her reliance on Comcast's doctors conclusion that she was "disabled" undermines her claim that she qualifies under MPDCRA.

### 3.  Resolution

Whether Washington was "disabled" under the PWDCRA at the relevant time in question is a question of law.  <u>Donahoo v. Master Data Center</u>, 282 F. Supp. 2d 540 (E.D. Mich. 2003).  In order to create a genuine issue of fact as to whether an employee should be protected under the MPDCRA, the employee must show that the employer's adverse action was "because of a handicap, " and "the handicap must be unrelated to the individual's ability to perform the duties of the job or position." <u>Crittenden v. Chrysler Corporation</u>, 178 Mich. App. 324, 331 (1989) (citing <u>Bogue v. Teledyne Continental</u>

Motors, 136 Mich.App. 374, 377 (1984)). Once the plaintiff presents evidence that he or she is "handicapped" and that the handicap does not affect his or her ability to perform the duties of a particular job, the burden of proof shifts to the defendant to show a legitimate, nondiscriminatory reason for its rejection of the plaintiff. Carden v. General Motors Corp., 156 Mich.App. 202, 211 (1986). If the defendant makes such a showing, the burden of proof shifts back to the plaintiff to show that the defendant's reason was false or a mere pretext. Crittenden, 178 Mich. App. at 331.

Washington has not established that there is a genuine issue of fact as to whether she is protected under MPDCRA. In Crittenden, the employee had provided evidence to show that despite his disability (hypertension), he could still perform most of his work with minor restrictions if he took medication. Thus there was a genuine issue as to whether he could perform his job. Here, Washington has not presented any evidence that she could perform her job while she was on approved leave. To the contrary, as Comcast points out, her claim for STD leave was based on her assertion that she was too ill to return to work until December 17, 2004.

### C. Bullard-Plawecki Employee Right to Know Act

### 1. The Legal Standard

Section 423.503 of the Bullard-Plawecki Act states that:

> An employer, upon written request which describes the personnel record, shall provide the employee with an opportunity to periodically review at reasonable intervals, generally not more than 2 times in a calendar year or as otherwise provided by law or a collective bargaining agreement, the employee's personnel record if the employer has a personnel record for that employee.

Moreover, "an employee may obtain a copy of the information ... contained in the

employee's personnel record... [and] the employer, upon that employee's written request, shall mail a copy of the requested record to the employee." M.C.L. 423.504.

The Michigan Court of Appeals has held that the purpose of Sections 503 and 504 is "to provide a method for ensuring that erroneous employment information that might harm an employee is corrected by providing employees an opportunity to review and dispute the information contained in their personnel files. Scuderi v. Monumental Life Ins. Co., 344 F. Supp. 2d 584, 603-04 (E.D. Mich. 2004) (citing Makohon v. DaimlerChrysler Corp., 2003 WL 22339225 at 7 (Mich.App.2003)).  See also, M.C.L. § 423.505 (delineating procedures for the removal or correction of information in an employee personnel record.)

### 2.  Arguments

Washington argues that Comcast violated the Bullard-Plawecki Act when it failed to mail her her personnel file after she requested it in writing on January 7, 2005, and after her attorney requested it in writing on April 20, 2005.

Comcast point out that the Bullard-Plawecki Act does not contain any specific time requirement for production of a copy of an employee's employment record.  Scuderi, 344 F. Supp.2d at 603-04.  Moreover, where there is not evidence of a willful withholding of an employee's file, delay alone in the production of a copy of the record is not a violation of the Act.  Id.  Comcast says that it did not willfully and intentionally violate the Bullard-Plawecki Act. Comcast explains that the reason why Washington was not given her personnel file when she requested it on January 7, 2005, was because she failed to provide human resources with her current address on her request form even after being

told to by Prestage.  Comcast says that Washington's attorney also failed to provide her current address in his employee file request on April 20, 2005.  Although Comcast admits that Washington did fax the Human Resources Department her current address on February 15, 2005, Comcast says that she faxed it in for the purpose of obtaining her remaining benefit checks and did not refer to her employment file request.  Comcast states it simply did not connect the fax with her file request, adding to the delay.  Finally, Comcast says that Washington has since been sent and received her employment file and has failed to argue that the delay harmed her in any way.

### 3. Resolution

Washington has failed to show that Comcast's delay in mailing a copy to Washington was a violation of the Bullard-Plawecki Act.  Since there is no specific time limit set forth in the Act, the Court must decide whether Washington has established that a genuine issue of fact exists to whether Comcast willfully and intentionally withheld Washington's employment file.  Scuderi  344 F. Supp. 2d at 603-604.  In Scuderi the court held an employer who failed to send an employee her personnel file for three months after her request did not violate the Bullard-Plawecki Act.  In reaching its decision, the court reasoned that the employer had offered an unrebutted explanation for the delay, the employer provided the employee's full record within a month after the employee initiated suit, the employee had not alleged that her file contained any false or incorrect information, and the employee had not shown that she was prejudiced in any way by the delay.  Id.

Similarly, Washington has presented no evidence that Comcast wilfully violated

the Bullard-Plawecki Act.  Comcast has offered the unrebutted explanation that it did not mail Washington her file after her or her attorney's written request because she did not include her current address on the form, and it did not link Comcast's change of address form (submitted for purposes of obtaining her benefits checks) with her request for her employment file.  Moreover, Washington has since received her full file, and she does not allege that it contains any false or incorrect information.  Finally, Washington has not shown how she was prejudiced by not having her file earlier.

## V.  Conclusion

For the reasons stated above, the Court GRANTS Comcast's motion for summary judgment.  The case is DISMISSED.

SO ORDERED.

                 s/Avern Cohn  
                 AVERN COHN  
                 UNITED STATES DISTRICT JUDGE

Dated:  January 17, 2007

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 17, 2007, by electronic and/or ordinary mail.

                 s/Julie Owens  
                 Case Manager, (313) 234-5160